## Carl BENJAMIN

### v.

## PETER'S FARM CONDOMINIUM OWNERS ASSOCIATION, Appellant.

### No. 86–3337.

United States Court of Appeals, Third Circuit.

Argued April 27, 1987.

Decided June 9, 1987.

Bernard C. Pattie (argued), Pattie and Daley, Christiansted, St. Croix, U.S. Virgin Islands, for appellant.

Britain H. Bryant (Law Offices of Britain H. Bryant and Associates, P.C., Christiansted, St. Croix, U.S. Virgin Islands, of counsel), Lee J. Rohn (argued), for appellee.

Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal by Peter's Farm Condominium Owners Association ("PFCA"),

---

from the district court's order denying its motion for a new trial. We must determine whether the district court erred in denying PFCA's motion to strike the economic expert's trial testimony for want of foundation, thereby rendering necessary a new trial on the damages issue. Because we conclude that the challenged testimony lacked the proper foundation, we will remand this matter for a new trial solely on the issue of damages.

## I.

This case is an action for money damages for personal injuries sustained by appellee, Carl Benjamin, when he slipped and fell on premises owned and maintained by appellant, PFCA. The facts established at trial are as follows. On the morning of November 8, 1984, Benjamin left his condominium and fell down a wet staircase located in the common area of the condominium complex. As a result of the fall, Benjamin sustained back injuries that prevented him from performing his job responsibilities as a marine mechanic at the St. Croix Marina. Consequently, upon his physician's recommendation, he quit his job on January 13, 1986. Prior to the injury, Benjamin was earning approximately $24,500.00 annually. Subsequent to quitting his job, he continued doing part-time mechanical work earning $250 weekly. He expected this part-time work to flourish into his own business.

At trial, which commenced on April 9, 1986, Benjamin's physician and chiropractor testified as to his permanent injuries.

Leonard Chasen, a certified public accountant, testified that based on Benjamin's 1984 tax return and various personal records, and a meeting between the two, he concluded that Benjamin's lost future earnings would total $500,000.00.[1] As part of his methodology, Chasen assigned a $10,000.00 annual value to Benjamin's post-injury, part time employment capacity. See supra note 1. Chasen testified that he arrived at the $10,000.00 post-injury earnings figure by asking Benjamin "how much did he feel he would earn from his endeavors." Appendix ("App.") at 30. He further testified that Benjamin "felt he was going to work part-time and ... that $10,000 was reasonable ... [H]e ... show[ed] me records ... [T]hey didn't support the $10,000. They were less, but we used the $10,000."[2] App. at 30–31. Besides Chasen's estimate, there was no other testimony regarding Benjamin's diminished earning capacity.[3]

After PFCA cross-examined Chasen, Benjamin rested his case. At a side bar conference shortly thereafter, PFCA moved for a directed verdict. It also moved to strike Chasen's testimony as prejudicial and without foundation. The district court denied both motions. Subsequently, the jury returned a verdict for damages in the amount of $360,000.00. It apportioned sixty percent of fault to PFCA and forty percent to Benjamin, resulting in a net award of $216,000.00. After the district court entered its judgment, PFCA moved for a new trial.[4] The court denied the motion. This appeal followed.

1. Chasen's calculation of Benjamin's future earnings loss was determined as follows: Chasen used Benjamin's 1984 income of $24,500.00, as reported on his income tax return, as the base amount. He then increased this amount by three percent for 27.5 years, Benjamin's work life expectancy according to an actuarial table. Both parties stipulated to the work life expectancy determination. See App. at 66. Chasen next assigned a $10,000.00 yearly value to Benjamin's post-injury part-time work capacity and increased this figure by three percent for 27.5 years. He then subtracted these two figures to reach a lost earnings figure of $667,-282.00. Finally, Chasen discounted this figure by two percent to reach his ultimate calculation of $500,000.00, the present value of Benjamin's future earnings loss. See App. at 27–31.

2. Benjamin's personal records reflect the amount of money received and disbursed from the time he quit his job until April, 1986, a period of three months. See App. at 23 and 34.

3. Dr. Payne and Dr. Menzies, both witnesses for Benjamin, testified as to his physical impairment. Both admitted, however, that the five percent impairment rating assigned by them was distinct from a disability rating and did not necessarily reflect his post-injury income capacity. See App. at 55 and 63.

4. PFCA advanced two positions in its motion for a new trial. First, the damages award was excessive. Second, Chasen's testimony lacked the proper foundation to be submitted to the jury. Because we agree with PFCA's second contention, we need not address the first.

## II.

The gravamen of this appeal is the propriety of Chasen's calculation of Benjamin's post-injury annual income or diminished earning capacity. The assigned $10,000 figure was based solely on Benjamin's personal belief as to how much money he could earn together with his personal records reflecting money received and disbursed during the three month period after the injury. *See* App. at 31, 34, 37. We must determine whether Chasen's calculation meets the standards established for ascertaining prospective earnings loss.

This Court has required more than speculative opinion when determining damages for prospective earnings loss. In *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3d Cir.1983), the plaintiff offered testimony by an economics professor to establish his past and prospective earnings loss. *Id.* at 98. The witness made projections based, on *inter alia*, an annual income figure of more than twice the plaintiff's average annual income for the four years preceding the accident. *Id.* At trial, defendant objected to this testimony on the ground that this factual prediction was improper. The district court, nonetheless, admitted the testimony. On appeal, this Court determined that defendant's objections should have been sustained because no evidence was presented to demonstrate that plaintiff was likely to experience such a dramatic income increase. *Id.* We concluded that "on remand, plaintiff's expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Id.*

Further support for the factual foundation requirement can be gleaned from *Walters v. Mintec/International*, 758 F.2d 73 (3d Cir.1985). In *Walters*, we found that there was sufficient support in the record to permit a jury finding of plaintiff's diminished earning capacity. Testimony at trial included two of plaintiff's former supervisors who testified about his work performance; a vocational rehabilitation expert who testified about plaintiff's post-injury earning capacity; and an economist who utilized the vocational expert's testimony to calculate the lifetime value of plaintiff's lost earning capacity. *Id.* at 79–80; *see also Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 101–102 (3d Cir.1977) (plaintiff's future economic loss was projected through a vocational guidance expert who determined post-injury earning capacity, in conjunction with an actuary who determined the present value of the future earning capacity loss based on work expectancy); *Cf. Heckman v. Federal Press Co.*, 587 F.2d 612, 618 (3d Cir.1978) (testimony must meet the requisite standards of proof and present an accurate and complete appraisal of the plaintiff's capabilities as well as his impairments).

## III.

■ Turning now to the case before us we conclude that, based on this record, Chasen's testimony lacked the proper foundation and sufficient factual predicates to support the future earnings loss calculation. Benjamin, on appeal, argues that the district court properly admitted Chasen's economic testimony.[5] He contends that

---

5. Benjamin also contends that under **Fed.R. Evid.** 103, PFCA waived the issue of the admissibility of Chasen's testimony by failing to timely object to its admission. *See* Brief for Appellee ("Br. for Appellee") at 11. We disagree. Generally, an objection will be timely if made as soon as its applicability is known or could reasonably have been known by the opponent. *See* 1 WIGMORE, EVIDENCE § 796 (Tillers rev. 1983). In the instant appeal, PFCA moved to strike Chasen's testimony after it cross-examined the witness and Benjamin rested his case. Not until cross-examination was complete did PFCA know that Chasen's testimony as to diminished earning capacity was based primarily on Benjamin's personal feelings rather than on a profes-

sional opinion. *See* App. at 32, 36. Although PFCA did not object immediately following cross-examination, we conclude that, in the absence of any demonstrable prejudice, the motion was nevertheless timely.

Benjamin further contends that because he rested his case and Chasen had been excused prior to the motion to strike, he was prejudiced by the objection because he was unable to recall Chasen for clarification. *See* Br. for Appellee at 13. We find this position to be without merit. Because the motion was based on a lack of factual foundation for the $10,000.00 calculation, additional testimony by Chasen could not have provided, and no one has indicated that there was any, additional factual support in

"no mathematical exactness is required in order to arrive at post-injury earning ability ... All that is required is that the jury be provided with some evidentiary and logical basis for calculating or, at least rationally estimating a compensatory award." Br. for Appellee at 14–17. We do not believe, however, that this contention addresses the issue.

 Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation. At trial, in response to PFCA's motion to strike, the district judge determined that "Chasen used [two things] to extrapolate his figures. One, he used '84 tax return as a business ... Two, he used a figure of $10,000 as offset earnings ..." App. at 40. We agree with PFCA's position that, on this record, Chasen's calculation is a "castle made of sand." *See* Brief of Appellant at 12. Similar to expert testimony in *Gumbs v. International Harvester, supra,* Chasen's testimony of Benjamin's prospective earnings loss was not accompanied by evidence that Benjamin could expect to earn only $10,000.00 annually as a result of injuries sustained. Chasen testified that he had neither training in vocational rehabilitation nor professional knowledge as to Benjamin's capacity to continue working a particular job. *See* App. at 32 and 36. Reliance on Benjamin's personal belief as to his capabilities was improper because Benjamin's belief was merely speculative. The figure derived from that reliance was thus without proper foundation and insufficient for a jury properly to assess Benjamin's damages. Unlike the experts in *Walters* and *Dudley,* Chasen not only calculated the present value of Benjamin's future earnings loss, which he was qualified to do, but also his post-injury earning capacity. This was improper.

We recognize our limited scope of review on appeal from denial of a motion for new trial, *see Link v. Mercedes-Benz of North*

*Am., Inc.,* 788 F.2d 918, 921–22 (3d Cir. 1986), but appellant has met its burden. We therefore conclude that, based on the record, Chasen testified to calculations for which he was not qualified. Benjamin failed to lay the foundation for his post-injury earning capacity from which Chasen could calculate the value of Benjamin's future earnings loss. The district court's order denying PFCA's motion for a new trial shall be reversed and this matter shall be remanded for a new trial solely on the damages issue.[6]

---

determining Benjamin's post-injury earning capacity. Thus, even though Chasen was excused prior to the motion, Benjamin suffered no resulting prejudice.

**6.** We note here that on remand the damage trial will not involve apportionment of fault. The jury, however, must be provided sufficient bases upon which to assess an award of damages.