Sgarlat, Appellant, *v.* Griffith.

Argued March 2, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*William A. Valentine,* for appellee.

OPINION BY RENO, J., April 16, 1943:

Appellant sued for the extra compensation stipulated
in a written excavation contract which he had with
the appellee who was the general contractor for the
erection of a building for the owner. The trial judge
sitting without a jury found for appellee. Appellant's
exceptions were dismissed by the court in banc, where-
upon he appealed.

The appellant agreed "to do all the excavating and
all concrete work ......" for the sum of $3,050

which was paid in full. The contract also provided that "In excavating if rock be found which would require removal by blasting $1.10 per cu. yd. will be paid for by measurements of the architect and certificate furnished by him." The claim is for $902 for excavating 820 cubic yards of rock.

The rock was not removed by blasting but with a jack-hammer, a mechanical contrivance operated by an air-compressor. The jack-hammer process was more expensive than blasting and it was employed, so appellant testified, because blasting might have resulted in damage to adjacent buildings and near-by persons. Doubtless, appellant, who, as far as the record discloses, was apparently an independent contractor, thus avoided possible tort liabilities to third parties. The question is whether, whatever his motive, having removed the rock without blasting, he can recover the extra compensation.

Appellant contends that the phrase "rock which would require removal by blasting" describes the kind of rock and not the method of removal, that if rock was found which ordinarily would require blasting the appellant could use any method for removing it and still secure extra compensation.

In the interpretation of contracts, "the ordinary meaning of language throughout the country is given to words unless circumstances show that a different meaning is applicable": Restatement of Contracts, §235. The "popular and ordinary" (*Abbott's Est.*, 198 Pa. 493, 496, 48 A. 435), the "natural meaning" (*McMillin v. Titus*, 222 Pa. 500, 72 A. 240), the "primary acceptation" (*Foundation & Construction Co. v. Franklin Trust Co.*, 307 Pa. 10, 15, 160 A. 711), the "common or normal meaning" (3 Williston Contracts, §618), the "ordinary and popularly accepted meaning" (17 C. J. S. "Contracts" §301) are well known standards for interpretation.

Tested by these standards, it is clear that the parties contracted in reference to blasting, to rock which required blasting and was to be removed by blasting. They were describing a method and they described it by using a common term known to all men. The popular, ordinary and normal meaning of blasting is a mode of rending or disintegrating rock or other substances by means of dynamite or other explosive. Any other meaning attributed to the phrase would be forced, strained and unnatural. Since blasting in that sense was contracted for and not performed the appellant cannot recover.

This disposition of the case obviates the necessity for extended discussion of the assignments of error which relate to the action of the trial court in reference to the architect's certificate. Almost four years after the completion of the work and just before this action was instituted the architect wrote a letter to appellant's counsel in which he said, inter alia, "Regardless of in what manner this material was removed, whether by jack hammer or dynamite, nevertheless it was rock. Consequently I hereby certify to the removal of the above material, to-wit: 820 cubic yards of rock excavation and leave it to others to adjudicate the terms of the contract for payment or non-payment of the same." Whether such an equivocal statement addressed to counsel and not to the owner or the general contractor is what the parties contemplated by an architect's certificate is debatable. Nevertheless, appellant secured the benefit of the only positive statement in the letter. Appellant's testimony was, to say the least, vague and evasive as to the quantity of rock removed by the jackhammer. Some rock was loosened and removed by a steam shovel. Other material, including rock, was apparently removed by the jack-hammer but it could have been excavated by the steam shovel and its removal would not have required blasting. Appellant made no attempt to allocate the quantities removed to the differ-

236

ent processes employed. In this state of the testimony the trial court might well have found that appellant had not proven definitely or even approximately the amount of rock which would have required blasting. The trial court found as a fact, using the architect's letter as a basis, that 820 cubic yards of rock were excavated. Appellant could not expect that the letter would do more for him.

All assignments of error are overruled.

Judgment affirmed.